Per Curiam:
This is an employee-removal case, in which both parties have moved for summary judgment, referred to trial commissioner Mastín G. White, pursuant to Rule 37 (e), for his recommendation for conclusion of law. The commissioner has submitted an opinion and a recommended conclusion. Plaintiff has sought review of that opinion and recommendation. Oral argument by counsel has been had, and the court has also considered the briefs filed by the parties. The court agrees with the commissioner’s recommendation and with his opinion (set forth in Part I below), *434 and adopts that opinion, as supplemented by Part II of this opinion, as the basis for judgment in this case (Part III).
I
OPINION OP COMMISSIONER
The plaintiff, a former civilian employee of the Air Force, sues for pay covering the period between July 22, 1955 (the date on which the plaintiff was dismissed by the Air Force) and October 1,1959 (the date on which the plaintiff secured employment with the Department of the Army). Both the plaintiff and the defendant have filed motions for summary judgment.
The agreed facts, as indicated in the pleadings and in the documents which have been submitted by the parties to supplement the motions for summary judgment, will be summarized in the succeeding paragraphs of this opinion.
Prior to July 22,1955, the plaintiff, a civilian and a non-veteran, was employed by the Air Force as an aircraft sheet metal manufacturer and repairer, and was assigned to duty at the Kelly Air Force Base in Texas. The plaintiff’s position was in the competitive civil service. During the period of that employment, the plaintiff prepared an article on the subject of “How Kelly Field Spends Your Tax Dollars.” In this article, the plaintiff stated (among other things) that “the Air Corps knew very little about the value of a dollar”; that “It seemed to me they were in a hurry to find out how much they could spend”; that “It was and it is common practice when we hear of the general coming through for inspection to clean our benches of parts whether they are of value or not and into the trash can they go”; that “the management was not delivering the [Government] bonds that they [the employes] had been buying it took seven to eight months before they delivered any bonds”; that “They had and still do have a policy that they will allow a man to stand around and do nothing for days at a time and not assign him; any work”; that “the only good that the counselors do is to cover up the mess that is created by these delinquent Department heads”; that on one occasion he and other employees “were * * * [in] idleness for about four weeks”; *435 that the heads of departments “are not qualified for their job”; that certain parts were being placed on engine manifolds without being inspected; that the Civil Service Commission should “give Kelly Field a thorough investigation”; that “I sincerely hope that a congressional investigation will come of this as there would be quite a bit more revealed than in this little article”; and “any Kelly field worker who has a suggestion to make please write me: (Box 1321) and I will publish same if permitted in next issue of this little book.”
On May 25, 1955, the plaintiff called at the office of Colonel T. E. McMahan, an Inspector General of the Air Force assigned to the San Antonio Air Materiel Area, and left with the latter a typed copy of the article referred to in the preceding paragraph. Approximately 2 weeks later, Colonel McMahan wrote a letter to the plaintiff under the date of June 8, 1955, stating in part as follows:
The draft of the pamphlet which you prepared and left with the Inspector General for review has been carefully analyzed. In order for this office to investigate an unsatisfactory condition, factual data regarding the condition must be furnished. The information in the draft is not adequate to furnish this office with any tangible evidence whereby a detailed investigation could be conducted. This office will continue to review management practices and in case deficiencies are noted in this area, necessary corrective action will be taken.
In view of the above no further action by this office is deemed necessary.
After the conference with Colonel McMahan, the plaintiff had 100 copies of his article printed in pamphlet form, and he distributed the pamphlets by giving most of them away.
At the time when the plaintiff prepared, printed, and distributed the article previously referred to, there was in effect an Air Force Public Information Manual (AFM 190-4, 1 February 1952) which contained (among other things) the following provisions:
Section II. ACTIVITIES INVOLVING SPECIAL PUBLICS

15. Civilian Employees

*436 e. The PIO [Public Information Office] will review speeches and manuscripts dealing with military subjects which are prepared by civilian employees.
Hi ❖ * *
Section III. MAGAZINE AND BOOK ACTIVITIES
* * * # *
19. Writing for Publication, and Review of Manuscripts
$ $ $ $ #
g. When the manuscript concerns military subjects it will be submitted to the public information office which will review it for accuracy, propriety, and conformance with policy, security, and for the deletion of classified matter.
The plaintiff did not comply with the instructions set out in the Air Force Public Information Manual by submitting his article for review and clearance prior to the publication and distribution of the article.[1]
On July 8,1955, there was served on the plaintiff, by order of the Commander of the San Antonio Air Materiel Area, a notice of proposed removal, stating in part as follows:
1. Your removal from employment at this base is being considered to promote the efficiency of the service. The following charges are made against you:
a. You have displayed an insubordinate attitude in the publication of a pamphlet entitled “How Kelly Field Spends Your Tax Dollars”. You wrongfully caused to be printed and distributed this booklet which contained and conveyed misleading and ambiguous statements pertaining to the efficiency and conduct of the mission of Kelly Air Force Base. This pamphlet constitutes an unwarranted and unjustified public attack on management personnel of Kelly Air Force Base.
b. Further, you have invited and encouraged other employees, through this pamphlet, to join you in continuing this attack by submitting material to you for further publications of this nature.
*437 2. You are given fourteen (14) calendar days advance notice from the date you receive this letter of the action being considered. * * *
3. Procedures of Civil Service Eegulation 9.102 (a) (1) are being followed in considering this action. You may reply personally and in writing to this notice giving reasons why this action should not be taken. You may submit affidavits and evidence in support of your reply.
Under the date of July 9, 1955, the plaintiff replied in writing to the notice of proposed removal mentioned in the preceding paragraph. In his response, the plaintiff (among other things) denied that he had displayed an insubordinate attitude by the publication of this pamphlet.
On July 15,1955, there was served on the plaintiff, by order of the Commander of the San Antonio Air Materiel Area, a communication entitled “Final Decision, Proposed Ee-moval” and stating in part as follows:
1. Final decision has been made to remove you from employment at this base. * * *
2. Your reply dated 9 July 1955 has been received and fully considered. After careful consideration of your written reply and information you submitted orally at a personal conference with the Director of Personnel on 13 July 1955,1 have found no new information which warrants withdrawal of your Proposed Eemoval. Therefore, it has been finally determined to effect your removal which is considered necessary and in the best interests of the federal service.
3. Your removal will become effective at the close of business 22 July 1955. You will be placed on annual leave beginning Monday, 18 July 1955, and you will clear the base before the close of business 15 July 1955.
4. You may appeal this decision upon the receipt of this notice and within thirty (30) days after the effective date of this action under the Air Force grievance procedure establishedby Chapter AF E2, Air Force Manual 40-1. * * *
In accordance with the Air Force grievance procedure, the plaintiff under the date of July 28, 1955, requested that a hearing be held before a grievance committee. Pursuant to the plaintiff’s request, such a hearing was held on August 10 and 11, 1955. The plaintiff and others appeared before the grievance committee and testified. On August 19,1955, the grievance committee made a report to the Commander of the *438 San Antonio Air Materiel Area. The committee recommended that the removal action relative to the plaintiff be sustained.
On September 6,1955, the Commander of the San Antonio Air Materiel Area wrote the following letter to the plaintiff:
The proceedings of your grievance hearing conducted on 10-11 August 1955 and the Grievance Committee Recommendations have been submitted to me for review and decision. After careful consideration of the testimony and evidence produced at the hearing and the conclusions of the Grievance Committee, I find that:
You displayed an insubordinate attitude in the publication of a pamphlet entitled “How Kelly Field Spends Your Tax Dollars”. You wrongfully caused to be printed and distributed this booklet which contained and conveyed misleading and ambiguous statements pertaining to the efficiency and conduct of the mission of Kelly Air Force Base. This pamphlet constituted an unwarranted and unjustified public attack on management personnel of Kelly Air Force Base.
It is therefore my decision in agreement with the Committee recommendations that the removal action be sustained.
In accordance with Air Force Manual 40-1, E2.2, you may submit a request in writing to this headquarters within ten (10) working days after receipt of this letter for review of your grievance by higher command. You may examine the records of this case and make comments pertaining thereto in the preparation of the case for review. You may also request a copy of the minutes of the hearing and exhibits. If you so desire, you may receive the assistance of the Civilian Personnel Office in processing your request for review.
At the plaintiff’s! request, the matter of his dismissal was reviewed by the headquarters of the Air Materiel Command at the Wright-Patterson Air Force Base in Ohio. In a letter dated February 10,1956, the chief of the Civilian Personnel Division at that headquarters wrote a letter to the plaintiff, stating in part as follows:
A complete review of your grievance record revealed sufficient testimony to substantiate the charges that you did display an insubordinate attitude in the publication of the pamphlet, “How Kelly Field Spends your Tax *439 Dollars”, and that the booklet contained and conveyed misleading and ambigious [sic] statements, pertaining to the efficiency and conduct of the mission of Kelly Air Force Base; and that the pamphlet did constitute an unwarranted and unjustified attack on the management personnel of Kelly Air Force Base. It is the decision of the Commander, Air Materiel Command, therefore, to. sustain the decision of the Commander, San Antonio Air .Materiel Area, to separate you from the Federal service.
This decision will be final unless you request further review and consideration on the basis of specific violation of 'law. Executive Order, rule or regulation of the Civil Service Commission, or regulation of the Department of the Air Force. * * *
Pursuant to an appeal that was filed by the plaintiff, the plaintiff’s case was considered on August 27, 1956, by the Air Force Grievance Review Committee at the headquarters of ¡the Air Force in Washington, D.C. The committee found that the charges against the appellant [the present plaintiff] were substantiated by the record, and that the removal action was warranted because of the seriousness of the appellant’s offense. The committee recommended that the previous decision of the Commander of the Air Materiel Command be sustained. The Secretary, of the Air Force approved the findings and recommendation of the committee.
The plaintiff endeavored to secure a review by the Civil Service Commission of his dismissal by the Air Force. However, the Commission, in a communication dated October 19, 1956, stated that it did not have jurisdiction to “investigate or review the sufficiency of the reasons for removal, reassignment or demotion of an employee” who was not a veteran.
On October 1, 1959, the plaintiff was reemployed by the Government. He was appointed to a civil service position as a sheet metal worker by the Department of the Army and assigned to duty at Fort Sam Houston, Texas.
It is clear that, in the absence of some specific provision to the contrary, the power of removal from office in the executive branch of the Government is incident to the power of appointment. Keim v. United States, 177 U.S. 290, 293 *440 (1900). With respect to nonveterans who hold positions in the competitive civil service, executive discretion in removing employees is limited by the provisions of the so-called Lloyd-LaFollette Act (Section 6 of the Act of August 24,1912 (37 Stat. 539,555), as amended by the Act of June 10, 1948 (62 Stat. 354)). That act provides in pertinent part as follows:
SEC. 6. (a) No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. Amy person whose removal or suspension without pay is sought shall (1) have notice of the same and of any charges preferred against him; (2) be furnished with a copy of such charges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits; and (4) be furnished at the earliest practicable date with a written decision on such answer. No examinations of witnesses nor any trial or hearing shall be required except in the discretion of the officer or employee directing the removal or suspension without pay. * * * [2]
The record shows that the Air Force, in effecting the plaintiff’s dismissal because of his action in printing and distributing the pamphlet, “How Kelly Field Spends Your Tax Dollars,” carefully complied with all the procedural requirements set out in the Lloyd-LaFollette Act. The plaintiff does not make any contention to the contrary, or contend that the Air Force failed to comply with any procedural requirements prescribed by pertinent administrative regulations (cf. Service v. Dulles, 354 U.S. 363, 388 (1957)). Therefore, the primary question before the court in the present proceeding is whether the court will weigh the evidence regarding the plaintiff’s dismissal by the Air Force to determine whether the Air Force did or did not have “such cause as will promote the efficiency of such service,” within the meaning of the quoted phrase as used in the Lloyd-LaFollette Act.
It has been said in a number of cases that where an administrative agency, in dismissing a civilian employee, has complied with the prescribed procedural requirements, the *441 Court of Claims cannot properly review the action of the administrative agency to determine whether or not it had just cause for such dismissal. Eberlein v. United States, 257 U.S. 82, 84 (1921); Culligan v. United States, 107 Ct. Cl 222, 223 (1946), cert. denied 330 U.S. 848; Jordan v. United States, 138 Ct. Cl. 647, 648 (1957); Monday v. United States, 146 Ct. Cl. 6, 9 (1959), cert. denied 361 U.S. 965. However, the ride just stated is subject to the further explanation that the court, upon the basis of a proper pleading, will review the evidence to determine whether the administrative official or officials who effected a dismissal acted arbitrarily or capriciously or in bad faith. Love v. United States, 119 Ct. Cl. 486, 493 (1951), cert. denied 342 U.S. 866.
In the present case, the petition contains allegations relative to: the publication by the plaintiff of the pamphlet, “How Kelly Field Spends Your Tax Dollars”; the plaintiff’s dismissal on a charge of insubordination; the hearing before a grievance board; the board’s affirmance of the dismissal; the affirmances, in turn, by the Commander of the San Antonio Air Materiel Area and the Commander of the Air Materiel Command; the action of the Secretary of the Air Force in approving the dismissal; and the failure of the Civil Service Commission to grant relief. The petition then asserts that the administrative action “was arbitrary and capricious.” Such a general assertion is not sufficient to raise the issue of whether the administrative action really was arbitrary or capricious. Rule 9(b) of the Rules of the United States Court of Claims provides that:
In all averments * * * of action alleged to be arbitrary, [or] capricious, * * * the circumstances constituting * * * arbitrary, [or] capricious * * * action shall he stated with particularity. * * *
It is obvious that the mere assertion in the petition that the administrative action complained of “was arbitrary and capricious” lacks the requisite particularity demanded by the pertinent rule.
Furthermore, if we overlook the insufficiency of the petition to raise the issue of alleged arbitrary or capricious administrative action, and if we review the factual data submitted by the parties, it must be concluded that the plain *442 tiff has failed to establish by a preponderance of the evidence that the administrative officials who were involved in the proceedings relative to the plaintiff’s dismissal acted arbitrarily or capriciously or in bad faith. Actually, there is nothing in the documents submitted by the parties to rebut the presumption that there was conscientious consideration of the plaintiff’s case at the various stages of the administrative proceedings, and that each decision in the administrative process was the result of an exercise of discretion by the particular administrative official or officials in weighing the pertinent factors. In the absence of clear evidence to the contrary, it is presumed that public officers have properly discharged their official duties. United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926); Atchison, T. & S. F. Ry. Co. v. Elephant Butte Irr. Dist., 110 F. 2d 767, 771 (10th Cir., 1940); United States v. Ragen, 177 F. 2d 303, 305 (7th Cir., 1949); cf. Knotts v. United States, 128 Ct. Cl. 489, 492 (1954).
This is not to say that reasonable persons would unanimously agree on dismissal as the appropriate penalty for the plaintiff’s conduct in publishing and distributing his pamphlet, “How Kelly Field Spends Your Tax Dollars.” Some reasonable persons might regard such a punishment as too severe in relation to the nature of the plaintiff’s conduct. However, the problem of deciding what disciplinary action was appropriate to the plaintiff’s case — or whether any disciplinary action was appropriate — was the responsibility of the officials of the Air Force. It is not within the province of the Court of Claims to pass upon the wisdom or propriety of the administrative decision.
For the reasons previously indicated, it is my opinion that the plaintiff’s motion for summary judgment should be denied, that the defendant’s cross-motion for summary judgment should be granted, and that the petition should be dismissed.
II
To the Commissioner’s opinion, which we adopt, we add the following:
Plaintiff says that he should be excused for publishing the pamphlet since Colonel McMahan, the Inspector General at *443 Kelly Air Force Base, did not warn him against publishing it or advise him to present it first to the Public Information Office for clearance. The Inspector General was an appropriate official to investigate charges of maladministration or of injustice at Kelly Air Force Base; it is quite clear from the transcript of the grievance hearing, which is part of the record in this court, that plaintiff went to him, not for advice or help about disseminating plaintiff’s views to the public or to the other employees, but rather to induce the colonel to investigate the conditions at Kelly which plaintiff alleged to exist. The Inspector General properly took that view of the visit and confined his efforts to that sphere; he was not called upon to go further and advise or warn plaintiff of the dangers and difficulties of publishing the charges which his office was being asked to investigate. In these circumstances, plaintiff has no right to rely on the Inspector General’s silence about the shoals ahead if plaintiff insisted on going forward on his own. Such a warning was not part of that official’s obligation.
We emphasize, too, that plaintiff was not discharged because, as a citizen or an employee, he simply sought to call attention through proper channels to maladministration at the Government installation for which he worked. Certainly, employees of the Federal Government are not shut off from discussing the defects of their employer, in proper context and fashion. Cf. Wieman v Updegraff, 344 U.S. 183, 191-92 (1952). But “How Kelly Field Spends Your Tax Dollars” — the pamphlet on which the removal was based— is not (on the one hand) a temperate, documented, discussion of specific circumstances known to plaintiff which deserved airing, nor is it (on the other hand) mere casual private “griping” of the common garden variety. It is a public printed document, deliberately circulated to about 100 individuals, which (i) makes several serious, but broad, general and unsupported, accusations of maladministration against the Air Force and Kelly Field, (ii) when it refers to specific incidents said to be known to plaintiff, gives the false impression that similar episodes occurred regularly or frequently, and (iii) recites incidents of a decade or so before the date of the pamphlet as if they were typical of current *444 conditions. Plaintiff’s presentation at the grievance hearing did not at all validate his charges, and the employing agency could properly conclude that he was recklessly scattering his buckshot without any concern for the unjustified injury he would be doing to the Air Force and the base. By his publication of this unwarranted and defamatory broadside, plaintiff violated the obligation of loyalty each employee owes to his employer (cf. National Labor Relations Board v. Local Union No. 1229, Int. Brotherhood of Electrical Workers, 346 U. S. 464, 472, 474, 476-77 (1953); National Labor Relations Board v. Washington Aluminum Co., 370 U.S. 9, 17 (1962)). The Federal Government, as employer, is entitled to a like measure of loyalty. On this record, plaintiff’s dismissal did not trench upon any rights of speech or communication he had as a citizen or as an employee. Cf. United Public Workers v. Mitchell, 330 U. S. 75 (1947).
Ill
Our conclusion is that plaintiff is not entitled to recover, his motion for summary judgment is denied, the defendant’s cross-motion for summary judgment is granted, and the petition is dismissed.

 At an administrative hearing that was held in connection with the plaintiff’s case, it was said that information regarding the necessity for the advance submission of manuscripts to the Public Information Office was widely disseminated among the personnel at the Kelly Field Air Force Base. However, the plaintiff stated at the hearing that he was unaware of the requirement. No factual finding on the plaintiff’s actual knowledge or lack of actual knowledge is feasible on the basis of the present record.

 The provisions of the Lloyd-LaFollette Act are set out in 5 U.S.C., 1958 ed., 652.