Per Curiam :
This case was referred to Chief Trial Commissioner Marion T. Bennett with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on January 14, 1965. Exceptions to the commissioner’s findings of fact and recommendation for conclusions of law were filed by plaintiff and the defendant requested that the court adopt both the findings of fact and recommended conclusions of law. The case was submitted to the court on briefs of the parties and oral argument of counsel. Since the court agrees with the trial commissioner’s findings, opinion and recommended conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, not entitled to recover and the petitions are dismissed.
OPINION OF COMMISSIONER*
Bennett, Ohief Commissioner: Plaintiff’s petition for loss of wages is predicated upon his allegation that the decision of the Air Force, in dismissing him from his civilian position, “was not supported by substantial evidence and was arbitrary, capricious and an abuse of discretion by plaintiff’s superior * * *, and not in conformance with applicable statutes and administrative regulations.”
It is emphasized at the outset that this case does not present the problems most common to claims for back pay for illegal discharge of a civilian Government employee, such as, for instance, failure to give adequate notice of the proposed separation, make written charges, or give opportunity to answer prior to discharge. Plaintiff’s proof here, *851 as distinguished from his petition, pertains actually to the nature of the appellate evaluation of his discharge after it took place. He would relate back this alleged error in review to undercut the discharge itself.
Prior to January 1960, plaintiff, a veteran’s preference eligible, was employed by the United States Air Force as a parachute repairer and packer at McGuire Air Force Base, New Jersey. On January 20, 1960, plaintiff was given in writing a 30-day notice of proposed removal. The notice charged that the specific reason for tire proposed removal was plaintiff’s second major violation of safety practices which occurred on January 11, 1960, when plaintiff left a packing paddle in a parachute he had packed, which might have caused it to fail to open. It also charged that on the same parachute plaintiff had set the altitude dial to open at 15,000 feet in violation of Technical Order 14D1-2-81, §IV, which required an altitude of 14,000 feet to be set. Plowever, this was not considered to be a major violation of safety practices, but only indicative of plaintiff’s carelessness.
All procedural regulations were complied with by the Air Force, and plaintiff was separated effective February 26, 1960. On March 17, 1960, pursuant to plaintiff’s request, an impartial ad hoc Air Force grievance committee was convened pursuant to Air Force Manual 40-1, AF E2.2, to conduct a hearing to determine (1) if the alleged violation occurred; (2) if it did, whether it was due to plaintiff’s negligence; and (3) if the incident was serious enough to warrant plaintiff’s removal. At the conclusion of the hearing, on the basis of all the testimony and record before it, the committee sustained plaintiff’s dismissal. It made specific findings, among others, that the parachute in question was packed by plaintiff and that upon routine inspection of the using organization it was found to contain a packing paddle bearing plaintiff’s initials. Further, it was found plaintiff had signed Air Force form 46, “Parachute Log,” certifying that he had inspected and packed the parachute in accordance with technical orders requiring removal of the packing paddle. 'Concerning the seriousness of the offense, the committee found that commanders of both the *852 Field Maintenance Squadron and Fighter Interceptor Squadron 'believed that a paddle left in a parachute could have caused it not to function, with possible loss of life to the user.
Plaintiff first alleges the administrative findings are not based on substantial evidence. In general, “[substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” It must be established upon a review of the entire record. Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938); River Constr. Corp. v. United States, 159 Ct. Cl. 254, 261 (1962); Williams v. United States, 130 Ct. Cl. 435, 441 (1955), 127 F. Supp. 617, 619 (1955), oert. denied, 349 U.S. 938.
Mr. Walter Rogers of the Fabrication and Repair Branch, Staff Sergeant Richard A. Ruffin, the Ncoic (noncommis-sioned officer in charge) of the parachute shop in which plaintiff worked, and Mr. Francis R. Adams, representative from management (the Government), all testified that on January 14, 1960, they were called to the using squadron to view the parachute in question. They observed a BA-15 parachute with a packing paddle, which had plaintiff’s initials on it, inserted under a flap and with the automatic release set at 15,000 feet. In addition, both Mr. Rogers and Sergeant Ruffin testified that the form 46, which was kept in the parachute, had plaintiff’s initials on it. Thus, it is not crucial that the particular parachute or paddle itself was not produced in evidence for plaintiff to identify, for although the initials on the paddle and on the form were “FM” plaintiff did not deny that he used “FM” as his initials. Furthermore, he admitted signing the form and putting Ids initials on the packing paddles which he used.
There is nothing in the record to indicate a possibility that someone other than plaintiff left his paddle in the parachute. The only evidence plaintiff presented to the grievance committee to sustain such an inference consisted of his own testimony that he had several paddles, that other packers often used them, and that his paddles were often missing. The record does not contain any corroborating evidence of such allegations. After plaintiff packed the parachute in *853 question on January 11,1960, it remained in a restricted area for 3 days prior to its delivery to the using squadron. The record is devoid of any evidence that the parachute was tampered with in this interval.
Similarly, the record supports the committee’s fiuding that although the parachute was inspected in the shop by another after plaintiff had packed it, there was no requirement that it be more than an external examination, which would not have revealed the paddle. Sergeant Ruffin, who was a certified inspector and who inspected the parachute after plaintiff packed it, testified that there was neither a regulation nor a standard shop procedure for the inspector to open the parachute flaps in making his examination. Plaintiff did not introduce any evidence to the contrary. Plaintiff did attempt to ask Technical Sergeant Joseph L. McBride what type of inspection the parachute shop made before it issued a parachute. Since Sergeant McBride was Ncoic of the Personal Equipment Section and did not work in the parachute shop, the chairman of the grievance committee ruled that he would not be competent to describe the inspection procedure that took place there. It cannot be said that this ruling was arbitrary. There is no indication that had Sergeant McBride been allowed to testify he would have referred to a procedure contrary to the one described by Sergeant Ruffin.
The grievance committee based its finding — that leaving a paddle in a parachute could have resulted in a malfunction— in part, upon an undated report of the incident written by Lieutenant Colonel Reginald L. Hayes, the commander of the 539th Fighter Interceptor Squadron at McGuire Air Force Base, in which he maintained such an opinion. This opinion was shared by Major Peter C. Reed, the commander of the 1611th Field Maintenance Squadron, in the letter of charges he sent to plaintiff. Neither Colonel Hayes nor Major Reed appeared before the grievance committee.[2] Plaintiff attacks the Colonel Hayes’ report as hearsay. It has been held that the hearsay rule is not applicable to administrative hearings so long as the evidence upon which a decision is ultimately based is both substantial and has probative *854 value. Montana Power Co. v. Federal Power Commission, 185 F. 2d 491, 497 (D.C. Cir. 1950), cert. denied, 340 U.S. 947 (1951) ; Willapoint Oysters, Inc. v. Ewing, 174 F. 2d 676, 690 (9th Cir. 1949), cert. denied, 338 U.S. 860. It is manifest that such is the case here.
The technical orders, which were before the committee but which were not made a part of the record, required the packer to remove the paddle from the parachute upon completion of his repacking. This foreign object packed in a parachute could — from the implication of the orders, if not from other evidence — have caused its failure and a loss of life. For a major safety violation, Air Force regulations make it mandatory to discharge the negligent employee.
It was not essential that the parachute in question, nor one similar to it, be produced before the committee. Sergeants McBride and Buffin both testified that a paddle left within a parachute could interfere with its use. In addition, management’s representative told the committee that there was no official investigation as to the seriousness of the charge, as management believed that the gravity of the incident was based upon the mere presence of the paddle in the parachute. Although Mr. Rogers and Sergeant McBride both conducted tests whereby a parachute successfully deployed with a paddle placed in the position that plaintiff left his, they were reluctant to infer that every parachute thus packed would open, or that a man using it at a high altitude would be able to get it to deploy. Neither was there any testimony before the committee that the parachute was tested on both the automatic and manual methods of opening.
Plaintiff next complains that the hearing was not conducted in accordance with the Air Force regulations which he interprets as giving a complainant before a grievance committee the unqualified right to request and require of defendant that it produce specified witnesses to appear in his behalf (AFM 40-1, AF E2.2, ¶9a(2)). It is well settled that if the department does not comply with its own regulations the discharge is invalid. Cf. Service v. Dulles, 354 U.S. 363 (1957). However, if an aggrieved party desires to assert a right provided for by the regulation involved in this case, he must comply with its conditions. This regulation provides *855 that “* * * persons desiring to bring witnesses will furnish the committee chairman with their names together with an indication of how the testimony of each would be relevant.”
Before the committee convened, its chairman advised plaintiff of his rights and obligations under this regulation. Plaintiff responded by sending the committee chairman a list of nine prospective witnesses. Plaintiff did not indicate how the testimony of each witness would be relevant. He merely advised that the witnesses he expected to call “* * * shall afford enlighten [sic] facts and expert opinions with regards to the ‘automatic type parachute’.” Since the regulations provided that the committee is to hear only those witnesses who, in its opinion, are in a position to offer testimony relevant to the grievance (AFM 40-1, AF E2.2, ¶9a(2) (c)), and since plaintiff did not show the relevancy of their proposed testimony, the committee did not properly have any obligation to call witnesses whose testimony it reasonably believed would duplicate that of others and would only be cumulative.
If the committee would be required to call all the witnesses desired by a claimant without a prior showing of the relevancy of their testimony, it is clear that the hearing would be unduly lengthened and burdened by irrelevant material. Five of the nine witnesses requested by plaintiff were produced and testified. Plaintiff entered no objection on the record about nonappearance of the others. Not all of the witnesses requested by management were made available either. Plaintiff’s current objection and claim of a violation of the regulation regarding witnesses is a pure afterthought which was not even advanced during his administrative appeal at any of its three levels. Plaintiff told the grievance committee that in his opinion it had accorded him “a very fair hearing,” except for the fact that the committee did not produce the parachute.
One of the witnesses requested by plaintiff but not produced by defendant was Airman Second Class Clarence Blythe. Plaintiff now argues that the decision of the committee was arbitrary and the regulations were violated in that the committee did not hear the testimony of Airman Blythe, who found the paddle within the parachute when he *856 examined it after it bad been delivered to the using squadron. However, Airman Blythe’s testimony was not necessary to support the charge. Although there was no direct testimony by Blythe as to the initial discovery, soon after he found the paddle in the parachute, Mr. Rogers, Sergeant Ruffin, and Mr. Adams all testified they, too, viewed it and observed the packing paddle bearing plaintiff’s initials under the flap. Rogers and Ruffin noted, also, that plaintiff had signed AF form 46 attached to the parachute which certified he had properly inspected and packed the parachute in accordance with orders specifying a paddle was not to be left in the chute.
Plaintiff seeks to create an inference that had Airman Blythe been called to testify, there would have been essential evidence presented to the committee in his favor. In order to maintain this inference, plaintiff would have the court disregard the testimony presented before it in which Airman Blythe fully corroborated the charge that, upon inspection of the parachute, he found the packing paddle with plaintiff’s initials and the signed form 46 inserted in the parachute. This testimony is being admitted and considered here, not as a basis for a finding that the committee’s decision was based on substantial evidence but as proof that the decision was not arbitrary or capricious. To disregard this testimony for such purpose would allow plaintiff to perpetuate a fiction that he was prejudiced by the committee’s not calling Airman Blythe to testify. The fact is that Blythe’s testimony would not have helped plaintiff at all. It is manifest that for the limited purpose for which the evidence presented here is being used, it is certainly permissible.
Plaintiff seeks to use Airman Blythe as both a shield and sword. While he did not object, at any stage of the administrative proceedings, to the fact that Blythe was not called as a witness, he now seeks to use his nonappearance to vitiate those proceedings and create an inference that his testimony would have helped plaintiff. Yet, when Blythe was called to testify in court, plaintiff objected to his appearance. Thus, clear questions are raised as to whether the committee acted in a capricious and arbitrary manner in not calling Blythe and *857 whether it violated the regulation concerning witnesses. It is clear from what has been said above that it did neither, and plaintiff was not prejudiced by the committee’s action. Had there not been other and substantial evidence in the administrative record to corroborate the finding of the paddle by Blythe in the parachute packed by plaintiff, the results could be different. But, that is not the situation here, and we do not need an unrestricted consideration of de novo evidence to establish what the facts are.
Plaintiff, however, objects to consideration by the court of any evidence not offered to the grievance committee and relies upon United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963), saying that this case holds that a factual decision of an administrative body is final (except for fraud) and review thereof is to be limited to the record before that body. But, that case is expressly limited to matters reviewed under the “disputes” clause of Government contracts {Bianohi, supra at 714, 718). Furthermore, the thrust of BianoM is clearly to justify the finality clause in Government contracts which “* * * would be frustrated if either side would be free to withhold evidence at the administrative level and then to introduce it in a judicial proceeding.” (Bianohi, supra at 717). Surely these considerations do not apply to the review of hearings before a grievance committee, especially in the present context in which the evidence introduced in this court is used, not to determine if an administrative finding is supported by substantial evidence in the administrative record but to show that the decision, based on the evidence the committee did have, was not arbitrary, capricious or in bad faith.
Plaintiff filed a motion for summary judgment based solely on the technical argument that the grievance committee failed to call Airman Blythe as a witness pursuant to plaintiff’s request and that defendant thus violated its regulations. Defendant filed a cross-motion asserting the contrary. Both motions were summarily denied by order of the court dated March 27, 1964. Lest there be any lingering doubt as to whether this issue has been carefully reviewed, the foregoing discussion has been extended in the hope of putting the question finally to rest.
*858 It must also be noted that these cases present no problems concerning plaintiff’s right or obligation to pursue an appeal before the Civil Service Commission as a veteran’s preference eligible. When officially advised, prior to his proposed discharge, of his right to appeal to the Commission or through the Air Force grievance procedure, he chose the latter alternative. The court on March 6, 1963, denied defendant’s motion for summary judgment which argued that plaintiff had not exhausted his administrative remedies because he did not make timely appeal to the Commission. He made an untimely appeal, dismissed for that reason. But, the court held that where offered the two alternatives and told that use of one precluded the other, plaintiff did not need to go to the Commission at all.
The power of removal from office in the executive branch of the Federal Government, absent some specific provision to the contrary, is incident to the power of appointment. Keim v. United, States, 177 U.S. 290, 293 (1900). Where an administrative agency has complied with the prescribed procedural requirements, the Court of Claims can only review the action to determine whether the officials who effected the dismissal acted arbitrarily, capriciously or were so grossly erroneous as to be in bad faith, as for instance where they may have acted without substantial evidence to support their decision or where they exceeded their authority. Bayly v. United States, 99 Ct. Cl. 598 (1943); Love v. United States, 119 Ct. Cl. 486, 493, 98 F. Supp. 770, 774 (1951), cert. denied, 342 U.S. 866.
Upon careful consideration of the administrative record consisting of the transcript of the grievance committee hearing and exhibits, together with the analysis of that record made by the parties in pretrial submissions to the commissioner and in requested findings and briefs, it is concluded that plaintiff has failed to establish by a preponderance of evidence that his dismissal was in violation of regulations of the Air Force, was arbitrary, capricious or in bad faith, or was not supported by substantial evidence. In the absence of evidence to the contrary, it is presumed that public officers have properly discharged their official duties. Harrington v. United States, 161 Ct. Cl. 432 (1963). The petition must be dismissed.
*859 FINDINGS on Fact
1. Prior to January 1960 plaintiff, a veteran’s preference eligible, was employed by the United States Department of the Air Force as a parachute repairer and packer at McGuire Air Force Base, New Jersey.
2.. On January 20, 1960, the Air Force gave plaintiff a 30-day notice in writing of his proposed removal from his job. The notice stated that the specific reason for the proposed removal was a second major violation of safety practices which could have resulted in loss of life. The first violation occurred on April 23, 1959, when plaintiff failed to comply with Technical Order 14D1-2-570 in packing a parachute which, consequently, might not have opened for normal use. Plaintiff was suspended for 2 working days without pay for this offense. The second violation charged that on January 11, 1960, plaintiff left a packing paddle in a parachute he had packed, and as a result, it too could have failed to open.[1] It also was charged that on the same parachute plaintiff had set the altitude dial to open the chute automatically at 15,000 feet in violation of T.O. 14D1-2-81, §IV, which requires an altitude of 14,000 feet to be set. However, the latter was not considered to be a major violation of safety practices but rather an indication of the careless manner in which plaintiff performed his work.
3. The notice of dismissal also apprised plaintiff of his right to reply. Pursuant thereto, on January 26, 1960, plaintiff replied to the charges and alleged that he thoroughly inspected and repacked the chute in question as required by T.O. 14D1-2-81. In addition, he alleged that his supervisor, Staff Sergeant Eichard A. Euffin, validated his inspection as being in compliance with T.O. 14D1-2-81. Plaintiff also supplied a written supplement to the January 26 letter and denied the seriousness of the alleged violation and suggested that under normal procedures an inspector would find the paddle. Plaintiff also made an oral reply on January 2T, 1960. On February 18, 1960, the commanding officer of plaintiff’s employment unit at McGuire Air *860 Force Base advised plaintiff that be did not consider plaintiff’s replies to have refuted the charges; that, on the contrary, the charges were fully supported by the evidence; and that, consequently, plaintiff’s removal would be effected on February 26, 1960. In addition, plaintiff was advised of his right to appeal under the Air Force grievance procedures or to the Civil Service Commission. He elected the former.
4. In accordance with the commanding officer’s decision, plaintiff was separated, effective February 26, 1960, The pertinent Air Force regulations set forth a table which specified penalties for certain listed offenses. One of the offenses listed therein was: “Failure to observe safety practices and regulations and danger to safety of persons or property is acute. * * For a major violation of safety practices, the regulations prescribed penalties, subject to review, ranging from official reprimand to removal for a first offense and mandatory removal for a second offense. In this connection, plaintiff’s suspension for the first major safety violation was appealed by plaintiff under Air Force grievance procedures, and the appeal was still outstanding when he was charged with the second major violation on January 20, 1960. Ultimately, on June 24, 1960, plaintiff’s suspension for the first violation of safety practices was upheld by the Office of the Secretary of the Air Force.
5. Plaintiff, by letter dated February 21,1960, advised the commander of his intention to appeal his dismissal through Air Force grievance procedures. After further correspondence relating to his appeal tmder the Air Force grievance procedures, plaintiff was advised on March 9, 1960, that a grievance committee would be appointed to hear his grievance and that this hearing would take place on March IT, 1960. Plaintiff was again given specific advice as to his rights under the Air Force grievance procedure regulations and told to appear personally before the committee. With respect to plaintiff’s right to request witnesses to appear on his own behalf at the grievance hearing, plaintiff was advised by letter, in part, as follows:
*861 c. You may request witnesses to appear in your behalf or present notarized statements from persons who are unable to appear at the hearing. If you desire witnesses who are employees of this Base, a list of their names and telephone extensions must be submitted to the undersigned, no later than 12 o’clock noon on March 15,1960. In submitting this list, include a statement indicating how the testimony of each witness will be relevant to your grievance. Upon receipt of your list of witnesses, each will be given a written notification subject to the conditions set forth below by the Committee Chairman, to appear at the hearing, however no witness can be compelled to testify. Only witnesses who, in the opinion of the Committee, are in a position to offer testimony relevant to your grievance and whose presence is practical and believed necessary to a fair consideration of your grievance will be heard.
6. Under Air Force procedures an ad hoc grievance committee was convened pursuant to AFM 40-1, AF E2.2,19a (2) (7 March 1955), then in effect. The cited Air Force manual provided, in part, that the chairman of the committee will:
9. PREPARATION FOR COMMITTEE HEARINGS. ^
(2) Inform the complainant and the person (s) complained against of their right to request witnesses to appear in their behalf or to present signed statements from witnesses if witnesses are not available. This notification will state that persons desiring to bring witnesses will furnish the committee chairman with their names together with an indication of how the testimony of each would be relevant. The notification also will include the following information:
*****
_(c) Only witnesses will be heard who, in the opinion of the committee, are in a position to offer testimony relevant to the grievance; whose presence is considered necessary to a fair consideration of the grievance; and whose presence at the hearing is practical.
7. Pursuant to the notice referred to above, plaintiff sent a list of his prospective witnesses on March 14, 1960, to the civilian personnel officer, as follows: Mr. Walter Eogers, Mr. James Devine, Staff Sergeant E. Euffin, Airman Second Class Mohammed, Technical Sergeant McBride, Ser *862 geant Spencer, Staff Sergeant Artman, Staff Sergeant Ma-hon, and Airman Second Class Blythe. In a supplement to this letter, plaintiff advised the civilian personnel officer at McGuire Air Force Base, who was chairman of the committee, that the witnesses he expected to call “* * * shall afford enlighten [sic] facts and expert opinions with regards to the ‘automatic type parachute’.” However, aside from this general statement, plaintiff did not indicate how the testimony of each witness would he relevant.
8. On March IT, 1960, the Air Force grievance hearing convened to determine (a) if the alleged violation occurred, (b) if it did, whether it was due to plaintiff’s negligence, and (c) if the incident was serious enough to warrant plaintiff’s removal.
9. The chairman of the grievance committee announced that, due to the late submission of proposed witnesses by the plaintiff, there had not been sufficient time to advise him until the date of the hearing of the decision that four of plaintiff’s requested witnesses would not be called to testify. The reason given for not calling these witnesses was that the grievance committee felt their testimony would be a duplication of the other witnesses who would be called. Neither plaintiff nor his representative at the hearing, Mr. Wm. G. Baillie, objected to this ruling. Management (the Government) had requested four witnesses, two of whom were not available and could not be called. Exclusive witnesses for plaintiff were Mr. Rogers, Mr. Devine and Sergeant Ruffin. Plaintiff also testified. Witnesses for management were Senior Master Sergeant Patsy Micacchione and Mr. Francis R. Adams. Sergeant McBride was called as a witness by both sides.
10. At the hearing plaintiff contended that the alleged safety violation was a singular occurrence which was really the fault of supervisory personnel charged with detecting such violations and who, when mistakes are found, should take steps to set up procedures to prevent situations which might lead to disciplinary action. The contention was also advanced that allegedly lax security and a 3-day time lapse between the date plaintiff packed the parachute and the date the violation was discovered gave rise to the opportunity *863 for foul play and sabotage. Further, it was asserted that, since a parachute similarly packed with a paddle in it was tested and successfully deployed, the seriousness of the violation was minimized. It was plaintiff’s testimony, also, that he had several paddles with his initials on them, that other packers often used them, and that some of his paddles were often missing. There is no corroborating evidence in support of the inferences raised by plaintiff in his defense, as to possible sabotage, theft or misuse of his paddles. Actually, the parachute shed was in a “restricted” security area and was kept locked when not in use by assigned personnel.
11. Mr. Walter Eogers of the Fabrication and Eepair Branch, Sergeant Eichard A. Euffin, the Ncoic (noncommis-sioned officer in charge) of the parachute shop in which plaintiff worked and who was plaintiff’s immediate supervisor, and Mr. Francis Adams, management’s representative, all testified that on January 14,1960, they were called to the using squadron to view the parachute in question. They observed a BA-15 parachute with a packing paddle, which had the initials “FM” on it, inserted under a flap, and with the automatic release set at 15,000 feet. It was improbable that the altimeter knob could have been disturbed accidentally. In addition, Mr. Eogers and Sergeant Euffin noted that the form 46, which was kept in the parachute and which the packer signed when his work was completed, had the initials “FM” on it. Plaintiff did not allege that the initials “FM” were not his. Plaintiff admitted putting his initials on packing paddles that he used. In his written reply to the charges of January 26,1960, which was before the grievance committee, plaintiff admitted signing the form, thus certifying that he had complied with the technical order requiring removal of the packing paddle.
12. The parachute in question contained the inspection stamp of Sergeant Euffin. After a chute has been completely inspected and repacked by the packer, it was standard procedure in the shop for a certified inspector to check the parachute and sign the inspection stamp, although there was no such requirement in the technical orders. In this inspection, only the general external condition of the parachute was to *864 be examined. There was no standard shop procedure for the inspector to open the parachute.
13. The technical orders, which were before the grievance committee but which were not introduced as evidence or made a part of the record, provide that in addition to the inspection following repacking, the squadron using the parachute is to inspect it at least once every 10 days and again immediately before issuance for flight. However, it was standard procedure for the 589th Fighter Interceptor Squadron to conduct a so-called 10-day inspection on a parachute as soon as it was received from the shop. Such an inspection is quite thorough in that it requires opening the parachute flaps. The evidence establishes that it was during such an inspection on January 14,1960, that plaintiff’s packing paddle was found within the BA-15 parachute, serial number 57-70575, by A/2c Clarence Blythe of the 539th Fighter Interceptor Squadron. However, Airman Blythe did not testify before the grievance committee.
14. The weight of the credible evidence before the committee was that a paddle left within a parachute could cause it to malfunction and fail to open in use. Both Sergeant McBride and Sergeant Buffin, who offered opinions, believed that it could interfere with its deployment. The technical orders, which were before the committee but not made a part of the record, required the packer to remove the paddle from the parachute upon completion of the repacking. Management did not conduct an investigation to determine the seriousness of the charge as it was of the opinion that the gravity of the incident was based upon the mere presence of the paddle in a parachute.
In addition, the committee received in evidence an undated report written by Lieutenant Colonel Beginald L. Hayes, the commander of the 539th Fighter Interceptor Squadron at McGuire Air Force Base, New Jersey, which stated that the paddle found inserted between the ripcord pins and the ripcord protector flap “* * * could have resulted in non-deployment of parachute due to pressure applied to paddle to locking loops causing retention of ripcord release pins.” This opinion was shared by Major Peter C. Beed, the commander of the 1611th Field Maintenance *865 Squadron, McGuire Air Force Base, New Jersey, in the letter of charges he sent to plaintiff.
Two separate unofficial tests were conducted by placing a paddle in a parachute in the same position that plaintiff left his. In both of these, the parachute opened properly. However, those who conducted the tests were reluctant to infer from this that every parachute thus packed would open, or that the parachute in issue would do so, or that a man using it at a high altitude would be able to get it to deploy.
15. Several times during the hearing plaintiff requested the production of a parachute and paddle similar to those mentioned in the charges against 'him. Each request was denied. Neither the paddle nor the parachute in question was presented as evidence, nor were they ever shown to plaintiff. There is nothing to indicate that plaintiff was prejudiced by the committee’s failure to have these items before it or to introduce them in evidence. It was the committee’s position that the questions before it would be resolved by the testimony of qualified witnesses.
16. At the conclusion of the hearing, the grievance committee reviewed the testimony and record before it, made specific findings, and recommended that on the basis of the inquiry and the evaluation of all the evidence the action to remove plaintiff should be sustained. The findings of the committee dated March 23, 1960, were, in part, as follows:
3. Findings'.
a. The record verifies that the BCO has recognized a first major offense of violation of safety practices and regulation. This Committee must accept this fact.
b. Mr. Morelli did sign off on AF Form 46, Parachute Log, for parachute serial number 57-70575, that it had been completely inspected by him on 11 Jan 60. The T.O. governing such inspection requires the removal of the packing paddle.
c. The Shop Inspector was not required to open the ripcord protection flap; he was required to perform a visual inspection and to observe generally the work in progress to assure himself of its adequacy.
d. A packing paddle was found on 14 Jan 60 in parachute serial number 57-70575 by personnel in the 539th FIS Personal Equipment Shop immediately after receipt. Further, the paddle had the initials “FM” on it.
*866 This is the acknowledged form of initialling of the aggrieved employee.
e. Two inspections would normally be made of each parachute by the using organization. The first of these did detect the packing paddle.
f. The Commanders of both the 1611 FMS and the 539th FIS have indicated in writing they feel that the area in which the packing paddle was left is critical and that if thus used could have resulted in malfunction and possible loss of life of the user.
g. There is nothing in the testimony or exhibits to give credence to the allegation of “frameup” or “sabotage”.
h. Although the inspection processes are designed to discover discrepancies and worked in this manner in this instance, this in no way relieves Mr. Morelli of any responsibility for this incident.
i. It has been established that the packing paddle belonged to Mr. Morelli and was found in a parachute packed by him; therefore, the Committee feels that Mr. Morelli left the paddle in this parachute.
j. Mr. Morelli during his testimony and his written statements does not appear able to comprehend or accept the seriousness of his error. If such attitude prevailed throughout the inspection process it is reasonable to assume the parachute may in fact have been used with the packing paddle left in it.
k. The very nature of Mr. Morelli’s position is concerned with a safety item intended to save lives under emergency conditions and this Committee feels that carelessness with parachutes cannot be condoned at any level.
l. This Committee finds that Mr. Morelli was guilty of a second major violation of safety practices. It further notes that the standard penalty for a second major offense of this nature is “Removal”.
17. On April 28, 1960, the commander of the 1611th Air Force Base Group, McGuire Air Force Base, notified plaintiff of his decision to sustain plaintiff’s separation. The commander set forth the reasons upon which his decision was based and advised plaintiff of his right to appeal to the commander of the Military Air Transport Service, Scott Air Force Base, Illinois.
18. On May 6, 1960, plaintiff advised the acting civilian personnel officer of McGuire Air Force Base of his intention *867 to appeal the decision to sustain his removal. In accordance with Air Force grievance procedures, a complete file of plaintiff’s case, together with the record of the grievance hearing, was forwarded to the commander of the Military-Air Transport Service (mats) at Scott Air Force Base, Illinois. By letter dated June 17, 1960, plaintiff was notified that after a review of the record of the grievance hearing conducted at McGuire Air Force Base by the mats Permanent Grievance Review Committee, the commander concurred in the findings of the grievance committee and ruled that plaintiff’s removal action was justified. In addition, plaintiff was advised of his further appeal rights to the Secretary of the Air Force and was told that to take such appeal he must cite the law, Executive order, rule or regulation violated, state specifically the violation charged and how it had an effect on the action appeals. This was a requirement of Air Force Manual 40-1. On June 21, 1960, plaintiff appealed to the Secretary of the Air Force but did not comply with the instructions just stated. The Secretary’s Office on September 16, 1960, dismissed the appeal on the grounds that plaintiff failed to comply with the requirements for appealing to the Secretary. Plaintiff thus exhausted his administrative remedies.
19. Plaintiff next filed suit before this court on December 28, 1960, contending that his removal was unlawful in that it was not supported by substantial evidence, was arbitrary and capricious, and was an abuse of discretion by plaintiff’s superiors. Plaintiff also contends that his removal was not pursuant to applicable statutes and regulations which the petition does not identify. In a response to a pretrial order of the commissioner wherein the parties further delineated the issues to be tried, plaintiff contended that no credible evidence was presented to the grievance committee to support the charges made by the Air Force against him and, thus, “the action of the committee was arbitrary, capricious, without discretion and not supported by the evidence.” Plaintiff also advanced the contention, which was not In his petition, that 'he had sought to call Airman Blythe who was supposed to have found the packing paddle in question and *868 that defendant’s failure to produce this witness was a violation of Air Force regulations which vitiated the adverse ultimate findings of the grievance committee.
20. The court on March 6,1963, denied defendant’s motion for summary judgment holding that plaintiff had exhausted his administrative remedies and did not, under the circumstances, have to appeal to the Civil Service Commission. Plaintiff had, in fact, on May 6, 1960, appealed to the Commission while simultaneously pursuing an administrative appeal from the adverse decision of the grievance committee. He had been advised prior to his removal on February 26, 1960, that he could appeal his discharge through Air Force grievance procedures within 10 days of discharge or, as a veteran’s preference employee (5 U.S.C. § 863), he could appeal, under section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 390, as amended 61 Stat. 723, to the Civil Service Commission within 10 days after his discharge from employment. He chose the former course. When his appeal was eventually filed with the Commission, it was dismissed as untimely and without a showing of extenuating circumstances for the delay.
In ruling on the motion for summary judgment, the court made reference to plaintiff’s affidavit concerning the absence of Airman Blythe as a witness and stated:
* * * No counter-affidavit has been filed. However, only the defendant has filed a motion for summary judg- ' ment. Its motion is denied. In the absence of a motion for summary judgment by plaintiff, we must remand the case to the Trial Commissioner for further proceedings.
21. On April 15,1963, plaintiff filed a motion for summary judgment based on the proposition that defendant had violated Air Force regulations in not calling Airman Blythe as a witness at the grievance committee hearing. The regulations relied on were not cited. Defendant filed a cross-motion for summary judgment and cited the regulation in AFM 40-1, ¶9a(2), which is quoted in finding 6, and pointed out that plaintiff made no objection during the administrative proceedings to the committee’s decision not to call Airman Blythe. Upon consideration of the motions and briefs and *869 without oral argument of counsel, on March 27, 1964, the court denied plaintiff’s motion and defendant’s cross-motion for summary judgment, by order and without opinion, and again remanded the case to the commissioner.
22. On November 17,1964, the trial was held. Defendant brought Airman Blythe to Washington, D.C., from California and offered him to plaintiff as a witness. The offer was refused, and plaintiff stated that he would rest on the administrative record which could not be augmented or corrected by partial trial de novo. Defendant offered the testimony of Airman Blythe and Colonel Hayes. The commissioner had previously ruled at a pretrial conference that their testimony would be heard, with a ruling reserved as to the extent, if any, to which the testimony would be considered as evidence as bearing on the issues framed by the pleadings and pretrial responses.
23. Airman Blythe corroborated the evidence that the alleged violation (i.e., leaving the packing paddle in the parachute and setting the altitude dial improperly) had been found by him upon his inspection of the parachute in question and that the inspection log accompanying the parachute certified, by plaintiff’s initials, that it had been properly packed by plaintiff. In addition, Airman Clarence Blythe testified that the paddle he found inserted in the parachute in question bore the initials “FM” and plaintiff, who was known as Fred Morelli, was the only person with these initials in the parachute packing shop known to Blythe.
24. Colonel ITayes testified that he signed the letter which was admitted in evidence at the grievance hearing and that he had personal knowledge of its contents. Colonel Hayes had conducted a test which led him to believe that the manner in which the paddle was placed could have caused the parachute to fail to open by its automatic device but that it worked manually. He had never packed a chute but had taken instruction on how it functions and had made over 1,000 flights in fighter aircraft wearing a parachute. He described and illustrated before the commissioner, with a parachute in evidence, the mechanics thereof and the alleged location of the packing paddle therein which he had witnessed at the time of the incident.
*870 Ultimate Finding
25. Plaintiff was separated from his position as a parachute packer at McGuire Air Force Base for a second major safety violation. He was accorded his rights pursuant to section 14 of the Veterans’ Preference Act. There were no prejudicial substantive or procedural violations of his rights in the hearing held before a duly appointed grievance committee nor in the several reviews of its findings adverse to plaintiff. The committee’s findings were based on substantial evidence. Thet action separating plaintiff from his position on the charge that he negligently left a packing paddle in a parachute, which he certified as properly inspected and packed and, thus, violated the procedures and regulations pertinent to his responsibilities, was neither arbitrary nor capricious. It is not necessary to consider de novo evidence presented to the court to sustain the administrative determination which is fully validated by the substantial evidence in the administrative record but such evidence is corroborative of the fact that the administrative findings and action were not arbitrary or capricious.
CONCLUSION OP LAW
Upon the foregoing findings of fact and opinion which are made a part of the judgment herein, the court concludes as a matter of law that the grievance committee’s decision sustaining plaintiff’s dismissal was supported by substantial evidence and was neither arbitrary nor capricious nor in violation of applicable statutes and regulations and, consequently, plaintiff’s petitions are dismissed.

The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 67(a).

 When Colonel Hayes testified before the commissioner, be Identified bis report quoted in finding 14. ■

 A packing paddle ia a stick about the size of a foot ruler but slightly thicker. A parachute packer uses the paddle to help tuck the chute into the tight package in which an aviator carries it.