Mr. Chief Justice Marshall
 

 delivered the opinion of the court.
 

 On the 25th day of March, 1789, George Kyger and Josiah Watson entered into articles 'for the exchange of a lot in Alexandria, estimated at $2,200, for certain lands in Kentucky, the property of. Watson. The' lot. was to be conveyed to Watson within eighteen; months from the date of the contract; in consideration of which, Watson stipulated to convey to Kyger such lands, surveyed and patented for him, on the waters of Élkhorn in Kentucky, as the said Kyger should select) ■ to the'extent of $ 2,200, at one dollar per acre, as soon as Kyger should make his election, and furnish a plot and. survey of the lánds chosen.
 

 On the 23d day of December, 1790, a second-agreement-was entered into, which, after reciting the terms of the first, states,, that George Kyger had represented to the said Josiah, thattfie land on Elkhorn was not so valuable as Kyger had supposed; and had proposed to extend the time of. surveying and, choosing the
 
 *54
 
 lands in Kentucky, and to be allowed to take lands to the amount of $2,200 on the waters of the Elkhorn, or from other lands patented for the said Josiah, in Kentucky, at the intrinsic value which such land bofe at any time between the 25th day- of March, 1789, and the 25th'day of September, 1790. On this representation it was agreed that the time for choosing,' valuing, and conveying the lands in Kentucky, should be extended eighteen months; that Kyger might take lands to the stipulated amount, from other tracts, which were specified, at the intrinsic value between the periods before mentioned, taking not less than 700 acres out of any one tract. To ascertain the value of these lands, Thomas Marshall, the elder, was chosen on the part of' Watson, and Samuel Buler on'behalf of Kyger; and it was agreed' that if T. Marshall, should die or refuse to act, the agent of Watson in Kentucky should nominate some other person in his stead. A similar provision was made for supplying the place of Buler. The selection and valuation being thus made, Josiah Watson was to convey the land selected dnd valued.
 

 In the year 1806, Daniel Kyger and others, devisees OfGeorge Kyger, party to the said contracts, filed their bill in chancery in the circuit court for the bounty of Alexandria, stating the contracts above mention,ed :' and'stating, farther, that the lot in Alexandria had been duly conveyed ; that Thomas Marshal had refused to act as a valuer.; that the agent of atson had nbminétted John M‘Whiaitan in his place ; that in the year 1791, the said M’Whatfan and Buler proceeded to make a valuation, by which' the lands on Elkhorn were val
 
 *55
 
 ued. at 1,200 dollars, and by which one tract of 1,800 acres on Ravin creek, and one other'tract of 1,200 acres on For'klick creek, were taken to complete Ihe.amount in value to which Kyger whs entitled under the eon. tract.
 

 The bill proceeds to state, that this valuation wás made known to Josiah Watson, and the, conveyances demanded, but from some unknown cause were .not made until Josiah Watson became bankrupt. That in the year G orge Kyger departed this life, having first made his last will in wiiting, in which he devis.ed all his real estate in Kentucky, to the plaintiffs. In the year 1805 the plaintiffs presented to Josiah Watson an affidavit made by' M‘Whattan and Buler, stating the valuation they had made, and demanded a conveyance. He excused himself on account'of the bankruptcy, but executed a release which recites the agreement and valuation; and that a 'deed for the lands had been executed by him, which was in the hands of John M£Iver,the defendant. This release is annexed to the bill. The bill prays that M£Iver, the defendant,' who is the assignee of the bankrupt, may be decreed to c'onveythe lands contained in the valuation of M’Whattan and Buler..
 

 The ahswer admits the contracts, but does' not admit that Thomas Marshall declined acting as a valuer, or that M£ 'Tiattan was appointed in his place. It avers that the Elichorn lands where worth the sum at ■which they were rated in the first contract, and that the second was obtained by the fraudulent representations of Kyger. ' That the valuation of M£Whatt.an and Buler was not only unauthorized, but made under
 
 *56
 
 an imposition practised on them by Kyger, who pfeváiled on them to consider the contract as' obliging them to value the lánds on Elkhorn and Eagle creek at no more that one dollar per acre," although they, might be worth more. That Josiah Watson never admitted that Kygerwas entitled to more than the Elkhorn and Eagle-creek land, which was, therefore, not conveyed to his assignees, though the other lands mentioned in the bilbwere • so conveyed.’ The defendant consents that a conveyance be decreed for the Elkhorn and. Eagle-creek lands, and insists that the bill as to the residue'ought to be dismissed.
 

 Several depositions were taken, which generally estimate the-Elkhprn and i]agle-creek land at a dollar^or more per acre. One .deposition estimates them ,at 83 cents. . Parts of those Ifinds were sold by Kyger at various prices, whether on credit, or on what credit,' is not stated, averaging rather more than one dpllar per acre, . '
 

 The deposition of M‘Whattari was taken by the de. fendant^and strips . that the valuers acted under the first agreement; and, to 'the best of his, 0:60011601100, thought themselves bound to estimate the first rate land at no more than one dollar per acre.
 

 . The' cóurt décreed a conveyance for all the lands contained in the valuation, from which decree the der fendant appealed to this' court.
 

 Thé appellant contends:
 

 . 1st. That the second contract ought to be annulled, having been obtained by fraud. . If.this be against him, then;■
 

 
 *57
 
 2d. The valuation ought to be set aside* and a revaluation directed.
 

 1. Admitting the lan^s on Elkhorn and Eagle-creek to have been worth, intrinsically, One dffllar per- acre, a fact not entirely certain, the court is of opinion, that the second contract is not impeachable on that ground. It is not suggested, nor is it to be presumed, that Watson derived his sole ‘knowledge of the value of his lands from the representations made by Kyger. The value fixed in the first contract was probably founded on his previous information, and there is no reason to doubt, that when Kyger was dissatisfied with the stipulated price, Watson was .perfectly willing to leave the value to arbitrators mutually chosen by- the parties. The court perceives no reason for- annulling the second contract..
 

 2. On. the second point the establishment of the val uation made by M‘Whatten and Baler* there is a total want of testimony. The defendant, in his answer, denies the authority of M‘Whattan-to' áct as a valuer, -and the¡re is no proof to support the allegation of the, bill. The ex parte affidavit of .M'Whattan and Buler, did it even contain any evidence of their authority, is inadadmissible ; and the recitals of the deed of the release executed by Watson after he became a bankrupt are not evidence. The decree, therefore, so far, as.it establishes this valuation, and orders conveyances to be made in conformity-with ‘it, must be reversed, and that valuation set.aside and a new one directed.
 

 Decree accordingly.